UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED

FEB 14 2019

U.S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION OF )
THE UNITED STATES OF AMERICA FOR A )
WARRANT AUTHORIZING THE )
INSTALLATION, ACTIVATION AND )
MONITORING OF A GLOBAL POSITIONING ) No. 4:19 MJ 92 (DDN)
SYSTEM ELECTRONIC TRACKING DEVICE )
(GPS DEVICE) TO BE LOCATED IN OR ON ) **FILED UNDER SEAL**
THE 2008 CHEVROLET AVALANCHE, ).
ILLINOIS LICENSE PLATE NUMBER 2548763, )
VEHICLE IDENTIFICATION NUMBER (VIN) )
3GNFK12348G163993.

## APPLICATION

COMES NOW the United States of America, by and through its attorneys, Jeffrey B. Jensen, United States Attorney for the Eastern District of Missouri, and Stephen R. Casey, Assistant United States Attorney for said District, and hereby makes application to this Court for a Warrant authorizing the installation, activation and monitoring of an electronic tracking device in or on the **2008 CHEVROLET AVALANCHE, ILLINOIS LICENSE PLATE NUMBER 2548763, VEHICLE IDENTIFICATION NUMBER (VIN) 3GNFK12348G163993,** (hereinafter the "subject vehicle"), which is being utilized by **Courtney Tyler Johnson**, pursuant to Rule 41, Fed. R. Crim. P. and 18 U.S.C. § 3117.

1. This application seeks authorization to monitor an electronic tracking device known as a Global Positioning System (GPS device). The GPS device would be concealed on the "subject vehicle" to be used by Courtney Tyler Johnson. The GPS device would enable the agents/officers of the Federal Bureau of Investigation (FBI) (hereinafter referred to as "investigative agency(ies)"), and other authorized federal/state/local law enforcement agencies, to surveil said "subject vehicle." This GPS device emits an electronic signal that can be located by a locating receiver to be possessed by the officers. The GPS device and locating receiver monitor

1

movement and physical location of the GPS device, but in no way transmits or records voice communication or acquires oral communication. The above-mentioned "subject vehicle" which is being utilized in connection with the commission of offenses involving on-going violations of Title 21, United States Code, Sections 841 and 846, Conspiracy to Distribute or Possess with Intent to Distribute a Controlled Substance.

2. Attached to this application and incorporated by reference as is fully set out herein is the affidavit of Chad Ramey, Task Force Officer, Federal Bureau of Investigation (FBI), which alleges facts in order to show that:

> There is probable cause to believe that evidence of the commission of the above-described offenses can be obtained through the use of a GPS device in or on the "subject vehicle," thereby enabling agents/officers of the investigative agency(ies) to track and surveil the movements of the "subject vehicle" for a period of forty-five (45) days;

3. In the event that the Court grants this application, agents/officers of the investigative agency(ies) or their authorized representatives seek authority to surreptitiously enter the "subject vehicle," including entry onto private property, to effect installation, any time during the day or night.

4. Specifically, the "subject vehicle" is parked in a private, multi-level parking garage located at a multi-unit apartment building. Vehicles are visible from the street; however, access to the parking garage is controlled. Agents/officers of the investigative agency(ies) or their authorized representatives seek specific authority to surreptitiously enter the parking garage structure, if necessary, to effectuate entry to the "subject vehicle" to install, maintain, service, repair, and remove the GPS device, any time during the day or night.

5. In the event that the Court grants this application, there will be periodic monitoring of the GPS device during both daytime and nighttime hours for the next forty-five (45) days

following the installation of said GPS device.   In addition, the GPS device may produce signals from inside private garages or other such locations not open to public or visual surveillance.

6. In the event that the Court grants this application, it is requested that in addition to the installation of said device that the agents/officers of the investigative agency(ies) or their authorized representatives have the authority to maintain, service, repair, and remove the GPS device, any time during the day or night.

7. In the event that the Court grants this application, within ten (10) calendar days after the use of the tracking device has ended, the Government will provide notice to the person whose property was tracked unless delayed notice is authorized by the Court.

8. In light of the ongoing nature of the investigation as reflected in the attached affidavit, applicant requests that the application, affidavit and Warrant be sealed.  However, applicant requests permission to provide the application and Warrant with counsel for the corporate owner of the previously mentioned apartment building/parking garage, if necessary, for the limited purpose of obtaining access to the parking structure so as to effectuate a surreptitious entry that avoids detection, unnecessary destruction or alteration of property, and the impediment of innocent residents.

WHEREFORE, on the basis of the allegations contained in this application, and on the basis of the affidavit of Chad Ramey, Task Force Officer, FBI, which is attached hereto and made a part hereof, applicant requests this Court to enter a Warrant authorizing law enforcement officials, agents/officers with the investigative agency(ies), or their authorized representatives, including but not limited to, other law enforcement agents and technicians assisting in the above-described investigation, to install, maintain, service, repair and ultimately remove a GPS device in or on the "subject vehicle;" to surreptitiously enter the "subject vehicle," including entry onto

private property of the parking garage structure, to effect said installation, maintenance, and removal, any time during the day or night; and to monitor the signals from that GPS device following the issuance of the Court's Warrant, including signals produced from inside private garages and other locations not open to the public or visual surveillance, and signals produced in the event that the "subject vehicle" leaves the Eastern District of Missouri but remains within the United States, and so as not to jeopardize the ongoing investigation, that the application, affidavit and Warrant be sealed but for the limited purpose of allowing corporate counsel for the garage owner to view the application and Warrant, if necessary.

                                                        Respectfully submitted,

                                                        JEFFREY B. JENSEN
                                                        United States Attorney

                                                        /s/ Stephen R. Casey
                                                        STEPHEN R. CASEY, #58879MO
                                                        Assistant United States Attorney
                                                         111 South 10th Street, Room 20.333
                                                        St. Louis, Missouri 63102
                                                        (314) 539-6068

Dated this   14th   day of February, 2019.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

**FILED**

FEB 1 4 2019

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

IN THE MATTER OF AN APPLICATION OF )
THE UNITED STATES OF AMERICA FOR A )
WARRANT AUTHORIZING THE )
INSTALLATION, ACTIVATION AND )
MONITORING OF A GLOBAL POSITIONING ) No. 4:19 MJ 92 (DDN)
SYSTEM ELECTRONIC TRACKING DEVICE )
(GPS DEVICE) TO BE LOCATED IN OR ON ) **FILED UNDER SEAL**
2008 CHEVROLET AVALANCHE, ILLINOIS )
LICENSE PLATE NUMBER 2548763, )
VEHICLE IDENTIFICATION NUMBER (VIN) )
3GNFK12348G163993 . )

## AFFIDAVIT

I, Chad Ramey, Task Force Officer with the Federal Bureau of Investigation (FBI), being duly sworn, depose and state that:

Upon information and belief, the **2008 CHEVOLET AVALANCHE, ILLINOIS LICENSE PLATE NUMBER 2548763, VEHICLE IDENTIFICATION NUMBER (VIN) 3GNFK12348G163993**, (hereinafter the "subject vehicle"), which is being utilized by **Courtney Tyler Johnson,** is presently being used in conspiracy to distribute and possess with the intent to distribute controlled substances, Title 21, United States Code, Sections 841 and 846.

Your affiant further states that there is probable cause to believe that the installation of an electronic tracking device known as a Global Positioning System device (GPS device) placed in or on the "subject vehicle," and monitoring of the GPS device, will lead to evidence of the aforementioned offense(s), as well as to the identification of individuals who are engaged in the commission of that and related crimes.

1

The source of your affiant's information and the grounds for his belief are based on your affiant's personal knowledge through ongoing investigations being conducted by the Federal Bureau of Investigation (FBI), and are as follows:

## INTRODUCTION

1. I am an investigative and law enforcement officer within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

2. I have been employed as a Police Officer for the Decatur Police Department in Decatur, Illinois for approximately 24 years. For approximately 20 years I have been assigned to the Decatur Police Department Street Crimes Unit. Since 2017, I have also been assigned as a Task Force Officer (TFO) with the Federal Bureau of Investigation (FBI), and currently assigned to the Eastern Illinois Violent Criminal Enterprise and Drug Trafficking Organization Task Force). During the course of these assignments and investigations, I have spoken to drug traffickers and gathered information from them about how they use vehicles in furtherance of their drug trafficking activities. I have also successfully used vehicle trackers in previous investigations to gather intelligence and evidence of criminal activities.

3. The statements in this affidavit are based in part on my own investigation, as well as information provided by other law enforcement officials, and on my experience, training and background.

4. This affidavit is not intended to be a complete and detailed description of all of the facts and evidence discovered during this investigation. I have set forth only the information I believe is necessary to establish the required foundation for the issuance of the GPS warrant requested.

## PROBABLE CAUSE

5. Cooperating sources that have direct access to members of the JOHNSON Drug Trafficking Organization (DTO) report that COURTNEY TYLER JOHNSON is a major drug source for the Decatur, Illinois area, responsible for bringing 2 to 3 kilograms of cocaine and approximately 10 pounds of high-grade marijuana to the Decatur, Illinois area, as often as two times a month.

6. Throughout this investigation confidential source reporting has been consistent in identifying JOHNSON as the main supplier of cocaine to the Macon County, Illinois area. These sources have also admitted to purchasing both powder and crack cocaine from JOHNSON's main distributors. All confidential sources state that JOHNSON will not deal with any buyer direct.

7. In September 2009, JOHNSON was stopped driving a silver-colored Chevrolet Impala displaying Illinois license plate K185360 by a Drug Enforcement Administration (DEA) Task Force Officer (TFO) on Interstate 270 and Highway 59 in Illinois. The traffic stop yielded $14,267 in United States currency and an apparent drug ledger with weight and currency amounts. A passenger in the vehicle was identified as DEANDRI L. BURTON.

8. In January 2011, JOHNSON was arrested by the Brownsburg, Indiana Police Department after approximately thirty (30) pounds of marijuana was located in the truck of a car JOHNSON was the passenger in. JOHNSON at the time of his arrest was in possession of $1,160 in United States currency.

9. In November 2013, Decatur Police Department conducted a traffic stop of JOHNSON on Interstate 72 in Macon County Illinois. JOHNSON was in possession of approximately $1,189 in United States currency. Officers also discovered a U.S. Postal receipt dated October 25, 2013. A United States Postal Inspector advised that the label number off the

receipt in JOHNSON's possession indicated that JOHNSON sent a package to a subject named TAMARA ALLEN with an address of 230 18th Street Northwest #11320 in Atlanta, Georgia. Records show that ALLEN was arrested in January 2013 by DEA agents in Kansas City. ALLEN at the time of her arrest was in possession of $13,100 in drug proceeds.

10. In October 2014, the Decatur Police Department was contacted by a United States Postal Inspector regarding a seized package containing a kilogram of suspected cocaine. The package was addressed to a subject who resides at 955 W. Center Street, Decatur, Illinois. The sender name listed on the package was from a subject out of Upland, California. Investigators determined that another female, not the name listed on the package, was the actual resident on W. Center Street. The female was contacted and interviewed by law enforcement, who stated the cocaine belonged to JOHNSON. The female advised JOHNSON was paying her $1,000 to have the cocaine package delivered to her address. The female advised she had accepted one other package for JOHNSON in the past.

11. In June 2016, a confidential human source (CHS-1) reported that he/she purchased cocaine from TIMOTHY EALEY on approximately 20 separate occasions, ranging amounts from 4 ½ to 9 ounces. CHS-1 reported that EALEY's source of cocaine is JOHNSON. CHS-1 stated that EALEY told him/her that EALEY is getting a kilogram of cocaine at a time for $38,000 from JOHNSON.

12. In January 2017, a confidential human source (CHS-2) reported that JOHNSON has been distributing drugs in the Decatur, Illinois for the past 7 to 10 years. CHS-2 labeled JOHNSON as the biggest drug dealer in the Decatur area. CHS-2 advised JOHNSON first started distributing marijuana but over the last five years JOHNSON has really picked up his distribution of cocaine, distributing approximately five kilograms of cocaine and 10 to 20 pounds of high-grade

marijuana monthly. Approximately 2 to 3 years ago, an unknown female who CHS-2 identified as JOHNSON's sister, went to California and brought back a shipment of marijuana in her checked luggage which CHS-2 saw with an airline baggage tag attached to it. CHS-2 said the bag contained clothing but had marijuana inside. CHS-2 is also aware of JOHNSON shipping marijuana to Decatur, Illinois via UPS.

13. CHS-2 reported that approximately two to three years ago, on at least two separate occasions, a subject nicknamed "D-GREEN," who is known to law enforcement as DARIAS GREEN, accepted UPS packages at 559 S. Boyd Street, Decatur, Illinois containing at least five (5) pounds of marijuana. CHS-2 advised JOHNSON paid GREEN to accept the UPS packages at this residence. Property records show that 559 S. Boyd Street is owned by GABRIELLE JOHNSON, identified as JOHNSON's sister.

14. On February 20, 2017, JOHNSON was seen by law enforcement entering the gated, storage facility known as Northwest Mini-Storage (NWMS), located at 2330 Route 121, NW, in Decatur, Illinois.

15. On February 21, 2017, a Federal Grand Jury subpoena was served on NWMS who provided documents relating to Unit #F19, the storage unit being rented by "KATHRYN KELSHEIMER," who law enforcement identified as JOHNSON's grandmother. The locker assigned to KELSHEIMER is located consistent to where law enforcement saw JOHNSON's vehicle parked on February 20, 2017. Access into and out of the facility is monitored through an access code individual to each renter. The access code assigned to KELSHEIMER was used the same day and approximate time that law enforcement saw JOHNSON enter the facility on February 20, 2017.

16. Records reveal that Unit #F19 was rented by KELSHEIMER on June 15, 2016. Records also indicate that the access code assigned to KELSHEIMER was used for entry and exit thirteen (13) times between September 28, 2017 and November 9, 2017. On March 2, 2017 a pole camera was installed in order to capture activity outside of storage Unit #F19. Data shows JOHNSON at the locker on each of these thirteen occasions between September 28, 2017 and November 9, 2017. The visits range in time from three minutes to fifteen minutes with multiple visits on the same day on five occasions. Records indicate the KELSHEIMER coded was used a number of times prior to the installation of the pole cam in the same manner.

17. Pole camera data on twelve of the thirteen visits between February 5, 2018 and July 5, 2018 shows JOHNSON entering F19, usually after dark, and exiting carrying items such as boxes and what appears to be trash bags. Visits last one minute to twelve minutes.

18. On January 31, 2018, the investigative team was notified of a money seizure by the Nevada Highway Patrol (NHP) in the amount of $754,294 that occurred on December 18, 2018 near Reno, Nevada. NHP conducted a traffic stop of a black, 2017 GMC Yukon SUV with Florida license plate GIEX58 as the vehicle was traveling west toward the California state line from Reno, Nevada. The NHP investigation identified the driver and only occupant as MARK D. CARTER with an address of 1257 Whispering Pines in St. Louis, Missouri. The NHP investigation lead to the discovery of $754,294 located in the back of the SUV driven by CARTER. CARTER told the NHP Trooper that he received some of the money from "ERVE" and "JAMES."

19. On January 31, 2018, investigators received information from the DEA, Reno Nevada office, who assisted the NHP in the seizure of the $754,294. The DEA provided the vehicle rental agreement on the black, 2017 GMC Yukon SUV driven by CARTER. Information from the

rental agreement shows that the vehicle was rented from the St. Louis International Airport on December 17, 2017 at 12:20 a.m. by MARK CARTER.

20. PRTT data on JOHNSON's previous cellular telephone of 217-464-0953 shows contact with two cellular telephones, 314-343-6064 and 314-682-8788, both which are registered to MARK D. CARTER with an address of 1257 Whispering Pines Drive in St. Louis, Missouri. PRTT data on 217-464-0953 (JOHNSON) between August 18, 2017 and December 17, 2017 shows forty-six (46) contacts with 314-343-6064 and seventeen (17) contacts with 314-682-8788. The last contact between 217-464-0953 and 314-343-6064 was on December 16, 2017 at 5:10 p.m. and the last contact between 217-464-0953 and 314-682-8788 was on December 12, 2017 at 4:05 p.m.

21. On January 31, 2018, investigators received information regarding the U.S. Department of Homeland Security laboratory report of evidence submitted by the NHP, specifically seven Foodsaver bags and two Ziploc vacuum seal bags that the seized $754,294 in US currency was wrapped in. Laboratory report findings indicate a presence of thirty-five (35) latent prints and five (5) palm prints. Searches conducted by the laboratory identified two subjects as candidates for comparison, JOHNSON and JAMES N. ALLEN.

22. On February 27, 2018, at approximately 8:37 p.m., surveillance watched as a silver-colored Nissan Altima, displaying Illinois dealer license plate DL021BB, pull into the driveway at 724 W. Division Street, Decatur, Illinois. A short time later, surveillance watched JOHNSON exit the front door at 724 W. Division Street and walk over to the passenger side of the Nissan Altima. JOHNSON pulled open the front passenger side door and leaned into the vehicle. JOHNSON then stepped back and shut the passenger side door and walked away as the Nissan then left the area east on W. Division Street.

23. On February 27, 2018, at approximately 8:43 p.m., Decatur, Illinois Police conducted a traffic stop of the Nissan Altima in Decatur, Illinois. The driver was identified as SHANNON FISHER and the front seat passenger was identified as JENNIFER FISHER (JOHNSON's mother). A search of the vehicle resulted in a recovery of $23,500 in United States currency from the vehicle's glove compartment. The currency was bundled in several zip-lock style bags. Both subjects denied ownership of the currency.

24. Illinois State Police laboratory analysis of the wrappings associated with the seized money showed fingerprints of JOHNSON on two of the zip lock bags.

25. On January 31, 2018, at approximately 2:03 p.m., surveillance showed that JOHNSON arrived at MARQUEVIN SMITH's house at 724 W. Division Street, Decatur. At approximately 9:47 p.m., surveillance showed a white, 2016 Chevy Impala arrive and stop on the street in front of 724 W. Division Street. No one exited the vehicle. Less than one minute later, surveillance identified JOHNSON as he walked up to the vehicle, opened the rear driver's side door and leaned into the vehicle. JOHNSON then pulled away from the vehicle, closed the vehicle door, and walked back toward the front of 724 W. Division Street. Approximately one minute later, surveillance watched as JOHNSON returned to the vehicle carrying a large bag. JOHNSON entered the back seat of the vehicle by way of the rear driver's side door. Approximately three minutes later, JOHNSON exited the vehicle without the bag and walked toward 724 W. Division Street. The 2016 Chevy Impala then pulled away.

26. A traffic stop was conducted on the white, 2016 Chevy Impala and more than 5,000 grams (12 pounds) of marijuana was located in the trunk of the vehicle in a vacuum-seal bag which was wrapped in two additional bags. The outer bag was similar to the bag that JOHNSON was carrying when surveillance observed him just prior to entering this vehicle.

27. On August 29, 2018, surveillance of JOHNSON was again conducted in Decatur, Illinois. JOHNSON was followed to Lucy Lu's Pizza. JOHNSON left the restaurant and eventually went to Unit #F19 at Northwest Mini Storage. JOHNSON removed five (5) individual packages of suspected marijuana from Unit #F19. JOHNSON placed the packages in a black bag then placed the bag in the trunk of the white Chrysler 300.

28. On August 29, 2018, detectives executed a federal search warrant for Unit #F19 located within the Northwest Mini-Storage facility. The results of the search revealed 12 large brown boxes containing a combined total of approximately 161 pounds of marijuana. The marijuana was packed in a zip-lock type clear bag then secured again in a vacuum-sealed bag. The unopened boxes were sealed with clear packaging tape. Inside the sealed brown boxes were thick black plastic trash-type bags that were secured with a zip-tie fastener. Inside each black plastic bag were at least 18 clear, vacuum-sealed packs of marijuana.

29. On September 12, 2018, surveillance was again conducted in Decatur, Illinois. Investigators observed JOHNSON enter Unit #F19. JOHNSON removed three large dark colored bags and placed them in the trunk of his vehicle. JOHNSON left the storage area and drove directly to 1503 N. Dennis and backed into the driveway. It should be noted 1503 N. Dennis is a known address associated with DEANDRI BURTON (reference paragraph 7, above).

30. On November 8, 2018, United States Magistrate Judge Shirley Mensah authorized the installation of a GPS tracking device on JOHNSON'S Chrysler 300 and Dodge Charger.

31. On November 13, 2018, surveillance was conducted in Springfield, Illinois and Decatur, Illinois. Detectives observed a black Chevrolet truck and enclosed trailer arrive in the Springfield area and travel directly to the Capitol Storage facility. The Dodge Charger arrived at the Capitol Storage facility where the Chevrolet truck and enclosed trailer were waiting at the

entrance. The electronic surveillance devices showed both vehicles parked in the area of Unit #190. Surveillance camera footage verified the Dodge Charger and the black Chevrolet truck and trailer both parked at Unit #190. A subject, appearing to be COURTNEY JOHNSON, exited the Dodge Charger and unlocked Unit #190. LINDELL WILLEY was observed removing two cardboard type boxes from the trailer. JOHNSON then placed both boxes inside storage Unit #190 and locked the storage unit. Both subjects enter their vehicles and left the storage facility.

32. Both vehicles were followed directly to the NWMS facility in Decatur, Illinois. Both vehicles entered the storage facility and surveillance camera footage confirmed the truck and trailer parked at Unit #F19. The GPS device showed the Dodge Charger at Unit #F19, but the vehicle was parked outside of the surveillance camera's range.

33. The surveillance camera depicted JOHNSON appear at the storage unit and unlock the unit. Because of headlight glare on the camera, detectives were unable to see the items carried from the trailer to the storage unit. However, JOHNSON made 13 trips from the enclosed trailer to the storage unit.

34. On November 16, 2018, detectives conducted surveillance of JOHNSON in conjunction with the GPS device. At approximately 3:00 pm the Dodge Charger traveled from the Clayton, Missouri area directly to the Springfield, Illinois area. The surveillance footage at Capitol Storage depicted the Dodge Charger arrive and park in front of storage Unit #190. Johnson appeared to exit the Dodge Charger, unlock the storage unit, remove a large cardboard box from the storage unit, and place the box in the Dodge Charger.

35. On November 20, 2018, surveillance was conducted of the Dodge Charger in Decatur, Illinois and of Timothy Ealey's residence, #10 Whippoorwill in Decatur, Illinois. At approximately 4:00 pm, GPS data showed the Dodge Charger was traveling north on Interstate I-

55 from the St. Louis area. The Dodge Charger traveled directly to the Northwest Mini Storage facility and surveillance camera footage showed the Dodge Charger parked at Unit #F19. A male subject exited the Dodge Charger and unlocked Unit #F19. The male was not positively identified but had the same physical appearance as JOHNSON. The subject removed two large cardboard boxes and two large black garbage bags from the storage unit and placed them all in the Dodge Charger. The subject locked the storage unit and the Dodge Charger left the storage facility.

36. The Dodge Charger drove directly to #10 Whippoorwill and parked at the residence. The driver of the Dodge Charger, believed to be JOHNSON, met with a subject later identified as TIMOTHY EALEY. The subject, believed to be JOHNSON, removed the two boxes and two garbage bags from the Dodge Charger and appeared to carry the items inside the residence. Eventually the Dodge Charger left the Decatur area. GPS data showed the Dodge Charger traveled to 3808 Eagle Claw in Springfield, Illinois. Surveillance camera footage confirmed the vehicle arrived and parked in the garage.

37. On November 25, 2018, GPS data showed that the Dodge Charger traveled to the NWMS facility in Decatur, Illinois and appeared to park at Unit #F19, which was confirmed by surveillance camera footage. A male subject, matching the physical description of Johnson, exited the vehicle and unlocked Unit #F19. The male subject removed one large box, one large black garbage bag and a large duffle bag from the storage unit and placed all three in the Dodge Charger and locked the storage unit.

38. On December 14, 2018, detectives observed a 2013 Chrysler minivan, Illinois registration BD45039 at 3808 Eagle Claw. This vehicle is registered to COURTNEY JOHNSON at 3808 Eagle Claw. JOHNSON left 3808 Eagle Claw in the 2013 Chrysler minivan. Detectives observed the 2013 Chrysler minivan arrive at Capitol Storage in Springfield, Illinois. JOHNSON

was identified exiting the driver's seat and unlocked Unit #190. JOHNSON removed one large cardboard box from the unit and placed the box in the rear cargo area of the 2013 Chrysler minivan. JOHNSON then locked the storage unit and left the area.

39. On December 16, 2018, detectives reviewed surveillance camera footage from the NWMS in Decatur, Illinois. In the early evening hours a dark colored minivan, appearing to be the 2013 Chrysler minivan, arrived and parked in front of Unit #F19. Detectives could not verify the registration of the vehicle but it was identical to the 2013 Chrysler minivan. A male subject, appearing to be JOHNSON, exited the van and unlocked Unit #F19. The male subject removed a large cardboard box from the storage unit and placed the box in the minivan. The male subject locked the storage unit and left in the minivan.

40. On December 22, 2018, the 2013 Chrysler minivan arrived at the NWMS in Decatur, Illinois. In total, JOHNSON removed 8 large cardboard boxes from Unit #F19, placed them inside the 2013 Chrysler minivan, and left the area.

41. On December 22, 2018, the 2013 Chrysler minivan arrived at Capitol Storage in Springfield, Illinois. Johnson unlocked Unit #190 and removed two large cardboard boxes from the storage unit, placed them in the 2013 Chrysler minivan, and left the area.

42. On January 3, 2019, United States Magistrate Judge Patricia Cohen authorized a GPS tracking device for 2013 Chrysler minivan.

43. Over the past month, Courtney Johnson has continued operating the 2013 Chrysler minivan and still frequenting 212 S. Meramec, Clayton, Missouri. Johnson has also continued frequenting his mother residence, 3808 Eagle Claw, Springfield, Illinois.

44. On January 17, 2019, covert surveillance camera footage captured **the subject vehicle**, Illinois registration 2548763, parked at 3808 Eagle Claw. Surveillance also observed the 2013 Chrysler minivan arrive at 3808 Eagle Claw. Also, on that date, the 2013 Chrysler minivan traveled to Decatur and entered the NWMS on two separate occasions. Eventually the Chrysler minivan parked at 1212 Lincoln Park Drive in Decatur, Illinois and remained there for several days and was being operated by DEANDRI BURTON (reference paragraph 7 and 29). In the meantime, JOHNSON had driven **the subject vehicle** to Clayton, Missouri and continued operating **the subject vehicle**. Eventually, BURTON returned the 2013 Chrysler minivan to JOHNSON and BURTON parked the **subject vehicle** at 1212 Lincoln Park Drive.

45. JOHNSON has been observed operating the 2013 Chrysler minivan over the past few weeks and primarily residing at 212 S. Meramec, Clayton, Missouri and continued frequenting 3808 Eagle Claw, #10 Whippoorwill, and other addresses within Missouri and Illinois.

46. On February 9, 2019, electronic surveillance showed that both JOHNSON and the 2013 Chrysler minivan traveled to the Kansas City area. On February 10, 2019, electronic surveillance showed that JOHNSON and the 2013 Chrysler minivan left Kansas City and traveled to the Decatur, Illinois area. Approximately 10:30 pm that night, covert camera footage showed the Chrysler minivan enter the NWMS facility. Minutes later, **the subject vehicle** pulled into the NWMS facility and parked directly next to Unit #F19. **The subject vehicle** had two male occupants. The passenger had the same physical characteristics as JOHNSON. The passenger, believed to be JOHNSON, unlocked Unit #F19 then both occupants went to the rear of **the subject vehicle**, removed at least seven large bags and placed the bags inside storage Unit #F19. A female, possibly from the Chrysler minivan, walked up and sat in the passenger seat of **the subject vehicle**. Camera footage then showed **the subject vehicle** at 3808 Eagle Claw where the two occupants

exited and went inside the residence. Precision location information from JOHNSON's cellular phone indicated JOHNSON was in the vicinity of 3808 Eagle Claw.

47. Based on the above facts, as well as my own training and experience, I believe that JOHNSON is distributing controlled substances, collecting/distributing the proceeds of controlled substance sales, and/or in a conspiracy to do the same. Based on my training and experience, I know that individuals who engage in such activities frequently use vehicles registered to them, and/or family members, and vehicles otherwise available to them, to transport illegal drugs and conduct meetings with co-conspirators. Based on the above, and my training and experience, I believe JOHNSON has used, and will use, **the subject vehicle** in furtherance of his drug distribution activities.

48. Based on surveillance and other information, JOHNSON frequently stays at an apartment building in Clayton, Missouri within the Eastern District of Missouri which investigators have identified as 212 S. Meramec in Clayton, Missouri. This apartment building has an attached parking garage which has a secured entry gate. To ensure the safety of the executing officer, and to avoid premature disclosure of the investigation, it is therefore requested that the court authorize installation, maintenance, and removal of the tracking device during both daytime and nighttime hours in the parking garage.

49. In the event the Court grants this application, there will be periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days following installation of the device. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

50. Additionally, given the nature of the investigation described herein, agents do not believe the investigation will reasonably be concluded in the next 180 days/6 months. Any safety

concerns undercover agents, witnesses that will not be resolved or mitigated in less than 180 days/6 months.

51.     In light of the ongoing nature of the investigation and this affidavit, I request that this affidavit be sealed.

WHEREFORE, your affiant respectively requests that the Court issue an order authorizing law enforcement officials, agents/officers with the DEA and other law enforcement agents and technicians acting under the supervision of federal agents, or their authorized representatives, to install and monitor, maintain, service, repair and ultimately remove a GPS device in or on the **"subject vehicle"** for a period of forty-five (45) days following the issuance of the Court's order, including signals produced from inside private garages and other locations not open to the public or visual surveillance, and signals produced in the event that the **"subject vehicle"** leaves the Eastern District of Missouri but remains within the United States, and that the notice requirements of Rule 41(d) be delayed until further notice of this Court so as not to jeopardize the ongoing investigation.

CHAD RAMEY
Task Force Officer -FBI

Dated this 14th day of February, 2019.

Sworn to and subscribed before me this 14th day of February, 2019.

DAVID D. NOCE
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF MISSOURI